# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS LOCAL 2, and FRANK CHRISTENSEN, Business Manager,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF LABOR,<br><br>Defendant. | No. 10 C 1935<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

The International Union of Elevator Constructors Local 2 and Frank Christensen (collectively, the "Union") bring this action under the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552 *et seq.*, seeking documents from the United States Department of Labor ("Department of Labor" or "Department"). (R. 1, Compl. ¶ 1.) The Department of Labor contends that the documents the Union seeks fall under FOIA Exemption 7(A), which exempts from disclosure records and information compiled for law enforcement purposes if production "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Presently before the Court are the parties' cross-motions for summary judgment, and the Union's motion for disclosure of the Department of Labor's *in camera* submissions. (R. 39, DOL's Mot.; R. 53, Union's Mot.; R. 69, Union's Mot. for Disclosure.) For the reasons stated below, the Department of Labor's motion for summary judgment is granted, and the Union's motions are denied.

## BACKGROUND[1]

### I. The Union's FOIA request and initial suit

On July 18, 2008, the Union mailed a FOIA request to the director of the Office of Labor-Management Standards ("OLMS").[2] OLMS is the agency authorized to administer and enforce provisions of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 *et seq.* (R. 51, Union's 56.1 Resp. ¶ 1.) Its responsibilities include promoting labor union and labor-management transparency through reporting and disclosure requirements; conducting civil and criminal investigations regarding possible violations of the LMRDA; and promoting union democracy and financial integrity in unions through standards for union officer elections and union trusteeships, and safeguards for union assets. (*Id.*)

In its request, the Union sought 15 categories of documents related to the Union and civil investigations of the Union conducted by OLMS from the period of January 1, 2005, to the present. (R. 58, DOL's 56.1 Resp. ¶¶ 1-2.) Specifically, the Union requested the following records:

    a.    Any and all documentation, ESI, and tangible materials that are related to the O'Hare Airport investigation performed by Barbara Moriarty, Stephen J, Bubulka, and/or any other investigator(s), and the complaint that initiated this investigation;

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 Statements. (R. 41, DOL's Local Rule 56.1 Statement of Material Facts ("DOL's Facts"); R. 49, Union's Local Rule 56.1 Statement of Material Facts ("Union's Facts"); R. 58, DOL's Local Rule 56.1 Resp. to the Union's Local Rule 56.1 Statement of Material Facts ("DOL's 56.1 Resp."); R. 51, Union's Local Rule 56.1 Resp. to DOL's Local Rule 56.1 Statement of Material Facts ("Union's 56.1 Resp.").)

[2] OLMS is an office within the Department of Labor, and thus "OLMS" and "Department of Labor" are used interchangeably in this opinion.

2

b.  any and all documentation, ESI, and tangible materials that are related to the investigation concerning the Marquette Restaurant, including the names of the investigator(s), regarding I.U.E.C., Local 2, and/or its Officers;

c.  any and all documentation, ESI, and tangible materials concerning the AON Building investigation, regarding I.U.E.C. Local 2 and/or its Officers;

d.  any and all documentation, ESI, and tangible materials pertaining to John H. Thompson and his Management status;

e.  any and all documentation, ESI, and tangible materials gathered for the Thompson Consulting and/or Thompson Inspection website;

f.  any and all documentation, ESI, and tangible materials gathered regarding telephone conversations had between the Department of Labor and the law firm of Querry & Harrow involving I.U.E.C., Local 2, and/or its Officers;

g.  any and all documentation, ESI, and tangible materials concerning telephone conversations with the Department of Labor and Kevin Caplis and/or April Walkup;

h.  any and all documentation, ESI, and tangible materials regarding Steve Hynes, John H. Sena, and Kurt MacGregor, concerning the Department of Labor investigation about removed or removing officers of Local 2;

i.  any and all documentation, ESI, and tangible materials concerning the Local 2 Elections that took place in November 2004 and January 2005;[3]

j.  any and all documentation, ESI, and tangible materials concerning John H. Thompson wherein he, or the Department of Labor, had knowledge of the identity of who the Sons of Liberty consisted of;

k.  any and all documentation, ESI, and tangible materials Barbara Moriarty gave to John H. Thompson or any of his family members; i.e. prior knowledge of subpoenas;

l.  any and all documentation, ESI, and tangible materials of the investigation of Local 2's November 2004 and January 2005 elections wherein paperwork was allegedly taken off of a vehicle;

---

[3] In line items "i," "l," and "o," the correct election dates are November 2005 and January 2006. For purposes of searching for records and responding to this FOIA request, OLMS used the correct dates of November 2005 and January 2006.

3

m.  any and all documentation, ESI, and tangible materials concerning Dennis Hastert's involvement with any of the above;

n.  any and all documentation, ESI, and tangible materials regarding the Postmaster General's investigation into the complaint of physical threats that was filed by Frank J. Christensen against Harold Thurmer and John H. Thompson; and

o.  the return of any and all documentation, ESI, and tangible materials concerning the Local 2 Elections that took place in November 2004 and January 2005.

(R. 51, Union's 56.1 Resp. ¶ 2.)

On July 23, 2008, OLMS sent a letter to Christensen acknowledging receipt of the FOIA request and promised that a "substantive response" would be forthcoming. (R. 58, DOL's 56.1 Resp. ¶ 4.) OLMS failed to provide a response, however, and the Union filed suit, No. 09 C 0326, in this Court on January 19, 2009. (*Id.* ¶¶ 5-7.) On February 18, 2009, the Department of Labor responded to the Union's FOIA request, refusing to disclose any documents and asserting Exemption 7(A). (*Id.* ¶¶ 8-10.)

The parties subsequently reached a settlement. (*Id.* ¶ 11.) The Department of Labor agreed to provide all publicly available responsive documents to the Union, and the suit was dismissed without prejudice on September 29, 2009. (*Id.* ¶¶ 11-12.) Pursuant to the settlement agreement, the Department of Labor provided a supplemental FOIA response and released 190 pages of publicly available documents to the Union on October 2, 2009. (*Id.* ¶ 14; R. 51, Union's 56.1 Resp. ¶ 13.) The Department of Labor withheld the remaining responsive documents, consisting of nearly 4,000 pages, and reasserted FOIA Exemption 7(A). (*Id.* ¶ 15.)

## II.  The current lawsuit

On October 16, 2009, the Union appealed the denial of the remaining documents to the Department of Labor. (*Id.* ¶ 18.) After the Department of Labor did not respond to their FOIA appeal within 20 days, the Union filed a motion to reinstate the prior suit in this Court on January 13, 2010. (*Id.* ¶ 19.) On January 25, 2010, the Department of Labor denied the Union's appeal. (*Id.* ¶ 20.) This denial constituted final agency action for purposes of judicial review. The Union filed the complaint in this case on March 26, 2010, objecting to the Department of Labor's assertion of Exemption 7(A) and seeking the release of the withheld documents. (R. 1, Compl.) On May 19, 2010, the Union filed a motion requesting an order compelling the Department of Labor to prepare a *Vaughn* index, which the Court denied. (R. 34, Mem. Opinion and Order.)

On January 18, 2011, the Department of Labor moved for summary judgment. (R. 39, DOL's Mot.). In its supporting memorandum, the Department of Labor maintains that the remaining responsive documents are properly withheld under FOIA Exemption 7(A) because the Union and Christensen are the targets of a pending criminal investigation and releasing the requested documents is reasonably expected to interfere with that investigation. (R. 40, DOL's Mem. at 1.) To support the withholding of these documents, the Department of Labor initially provided three sworn declarations: two from Mary J. Kebisek ("Kebisek"), (R. 41, DOL's Facts, Ex. 1 ("Kebisek Decl."); R. 57, DOL's Reply, Ex. 1 ("Second Kebisek Decl.")), and one from William Thompson, II ("Thompson"), (R. 42, DOL's Facts, Ex. 2 ("Thompson Decl.")). Kebisek has been the District Director of OLMS since 2004 and supervises investigations conducted by OLMS into alleged violations of LMRDA. (R. 41, Kebisek Decl. ¶ 1.) Thompson is the Associate Solicitor for Management and Administrative Legal Services, Officer of the

Solicitor, at the Department of Labor, and supervises the FOIA Appeals Unit and the FOIA Litigation Unit for the Department of Labor. (R. 42, Thompson Decl. ¶ 1.)

According to Kebisek's declarations, OLMS is currently conducting an investigation into possible criminal violations of the LRMDA by the Union and its officers, employees, and employers over the past seven years. (R. 41, Kebisek Decl. ¶ 12.) Kebisek maintains that the documents responsive to the Union's FOIA request relate to this pending OLMS investigation. (*Id.*) The approximately 3,900 pages withheld from the Union are comprised of approximately 750 documents, which fall in the following categories:

- a.  Correspondence: 320 documents;
- b.  Witness and informant statements: 178 documents;
- c.  Internal memoranda: 153 documents;
- d.  Union documents and reports: 87 documents;
- e.  Court filings: 12 documents; and
- f.  Newspaper articles: 1 document.

(R. 57, Second Kebisek Decl. ¶ 6.) Kebisek states that records also include closed OLMS investigations of the Union and its officers, employees, and employers pertaining to alleged civil violations of the LMRDA from 2004 through 2006. (*Id.* ¶ 11.)

The Union filed a cross-motion for summary judgment on March 11, 2011, (R. 48, Union's Mot.), and a corrected motion on March 14, 2011. (R. 53, Union's Mot.) In its motion, the Union claimed that the Department of Labor had failed to demonstrate that the withheld documents fall within Exemption 7(A) and that an *in camera* review of the documents was warranted. (R. 53, Union's Mot.)

On June 6, 2011, after reviewing the Department of Labor's submissions in support of its motion, the Court deferred resolution of the parties' cross-motions for summary judgment and

ordered the Department of Labor to submit declarations that met the criteria outlined in the order, as well as the withheld documents for an *in camera* review. (R. 63, Order.) On July 7, 2011, the Department submitted the documents and an additional declaration from Kebisek. (R. 75, Third Kebisek Decl.) Shortly thereafter, the Union filed a motion for the disclosure of the revised Department of Labor declaration as well as any documents "wrongfully withheld" from the Union. (R. 69, Union's Mot. for Disclosure.)

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 627 (7th Cir. 2006) (quoting *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994)). Because FOIA cases usually involve only a dispute over how the law is applied to the withheld records, rather than any factual dispute, whether the government is justified in invoking an exemption is typically decided at the summary judgment phase. *See Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1036 (7th Cir. 1998); *Wright v. OSHA*, 822 F.2d 642, 644 (7th Cir. 1987).

## ANALYSIS

The Freedom of Information Act generally envisions a policy favoring broad disclosure of federal agency records. *See Solar Sources*, 142 F.3d at 1037 (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). At the same time, however, the Act also contemplates that certain government documents should not be subject to public disclosure, and Congress

7

included nine exemptions from its disclosure requirements. *See* 5 U.S.C. § 552(b). When invoking an exemption under FOIA, the government bears the burden of justifying its withholding of the information. *Id.* § 552(a)(4)(B). The district court must determine *de novo* whether the government has satisfied its burden. *Id.*

In this case, the Department of Labor has asserted Exemption 7(A), which exempts from disclosure records and information compiled for law enforcement purposes if production "could reasonably be expected to interfere with enforcement proceedings." *Id.* § 552(b)(7)(A). In enacting Exemption 7(A), "Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their case." *Robbins Tire*, 437 U.S. at 224. While the Court must give "meaningful reach and application" to Exemption 7(A) given its purpose, the exemption must also be construed narrowly "given the general policy favoring disclosure." *Solar Sources*, 142 F.3d at 1038 (internal quotation marks and citations omitted).

To justify nondisclosure under Exemption 7(A), the government must show that both prongs of 7(A) are met: first, that the records or information were compiled for law enforcement purposes, and second, that disclosure might impede enforcement proceedings. *Wright*, 822 F.2d at 644. Under this exemption, "[t]he Government need not establish that release of a particular document would *actually* interfere with an enforcement proceeding." *Solar Sources*, 142 F.3d at 1037. Instead, the government need show only "that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" *Robbins Tire*, 437 U.S. at 236. Accordingly, it is well-established "that the Government may justify its withholdings by

reference to generic categories of documents, rather than document-by-document." *Solar Sources*, 142 F.3d at 1038 (citations omitted).

To discharge its burden when invoking a FOIA exemption, the government can submit affidavits that "(1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of bad faith." *Stein v. Dept. of Justice and Fed. Bureau of Investigations*, 662 F.2d 1245, 1253 (7th Cir. 1981) (citations omitted). When Exemption 7(A) is invoked and the government relies upon generic categorizations, "the government must define functional categories of documents; it must conduct a document-by-document review to assign documents to proper categories; and it must explain to the court how the release of each category would interfere with enforcement proceedings." *In re Dept. of Justice*, 999 F.2d 1302, 1309-10 (8th Cir. 1993) (citing *Bevis v. Dept. of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986)). When taking this categorical approach, the government's "definitions of the relevant categories of documents must be sufficiently distinct to allow a court to grasp how each category of documents, if disclosed, would interfere with the investigation." *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986) (internal quotation marks and citation omitted). If the affidavits submitted by the government meet these criteria, summary judgment for the government is appropriate without an *in camera* review of the documents. *Stein*, 662 F.2d at 1253.

The Court found that the broad categories of documents and boilerplate law enforcement justifications listed in the Department's declarations in support of its motion did not provide the

Court with sufficient information to decide whether the requested materials fell within Exemption 7(A). (R. 64, Order.) The Court accordingly ordered the Department of Labor to submit more detailed declarations that met the criteria laid out by the Court, as well as the withheld documents for *in camera* review. (*Id.*) The Department of Labor complied with this order, and submitted the documents and an additional 29-page declaration from Kebisek *in camera*. (R. 75.) Based on this declaration and a review of the withheld documents, the Court concludes that the Department of Labor justifiably withheld the documents from production under Exemption 7(A).

First, unlike Kebisek's initial declarations, her third declaration submitted *in camera* is specific, detailed, and demonstrates that the withheld documents logically fall within Exemption 7(A). The declaration consists of: (1) an explanation of the complaints and allegations that led to the initiation of the criminal investigation; (2) a description of the pending criminal investigation; (3) a description of the closed civil investigations and how they relate to the pending criminal investigation; (4) an identification of the documents responsive to the Union's FOIA request; and (5) an explanation of how disclosure of those documents would harm the pending criminal investigation.

Kebisek highlights in detail the risk that disclosure of these documents would prematurely reveal the Department of Labor's evidence, as well as the nature, scope, direction, and focus of its investigations. This, in turn, could enable the targets–here, the Union, its officers, employers, and employees–to destroy or alter the evidence or construct defenses. Releasing the withheld information could also enable the Union, its officers, and employees to identify the witnesses and confidential informants assisting the Department of Labor in its

investigations, raising the possibility of witness intimidation and harassment. These are the very risks of interference that Exemption 7(A) is meant to prevent. *See Robbins Tire*, 437 U.S. at 239-42. Given the specificity and detailed descriptions and justifications in Kebisek's third declaration, further discussion of which would reveal the information the Department seeks to protect, the Court concludes that the Department has established that the withheld documents were compiled for investigatory purposes and that releasing the requested documents would interfere with an ongoing investigation.[4]

Second, the Court's conclusion that the Department was justified in withholding the remaining documents is buttressed by the Court's *in camera* inspection of the documents. Kebisek's declarations identified the nature of the documents, their relation to the current investigation, and specific harms associated with the release of the documents, and a review of the documents themselves corroborates these declarations. Accordingly, the Court concludes that the Department of Labor has properly invoked Exemption 7(A).

Seeking to avoid this result, the Union argues that some of the responsive documents are from closed civil investigations of transactions which occurred more than five years ago and are now beyond the statute of limitations. (R. 50, Union's Mem. at 9.) This argument fails, however, because "[t]he fact that the Government has closed a particular investigation does not

---

[4] The Court notes that Kebisek's declaration is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims[.]" *SafeCard Serv., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (internal quotation marks and citations omitted); *see also In re Matter of Wade*, 969 F.2d 241, 246 (7th Cir. 1992) ("Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned."). Here, the Union has alleged that the Department of Labor acted in bad faith in numerous ways. (*See* R. 50, Union's Mem. at 11-12.) These contentions, however, are mere speculation and therefore the Court declines to find any evidence of bad faith on the part of the Department.

11

make it any less likely that disclosure in this case 'could reasonably be expected to interfere with enforcement proceedings.'" *Solar Sources*, 42 F.3d at 1040. The Department of Labor admits that the material responsive to the Union's request was originally compiled for civil investigations that are now closed, but contends that the material is being relied upon and referenced in the current criminal investigation. (R. 40, DOL's Mem. at 9 (*citing* R. 41, First Kebisek Decl. ¶ 16); R. 75, Third Kebisek Decl. ¶ 29.) They are thus properly withheld under Exemption 7(A) because their release could reasonably be expected to interfere with the current investigation.

Finally, the Court denies the Union's motion for disclosure of Kebisek's *in camera* declaration and any documents that were wrongfully withheld from the Union. (R. 69, Union's Mot. for Disclosure.) As discussed above, the Court concludes that the requested documents were properly withheld by the Department. Additionally, the Court has determined that no portion of Kebisek's *in camera* declaration can be disclosed without revealing the information the Department of Labor seeks to protect. The Court recognizes that "submission of documents and declarations *in camera* should be accompanied 'by as much of a public record as possible.'" *Solar Sources*, 142 F.3d at 1040 (citation omitted). At the same time, however, the disclosure of documents properly withheld under the FOIA is not required "in order to ensure the proper functioning of the adversary process." *Id.* The Court accordingly declines to disclose any of the withheld documents or Kebisek's *in camera* declaration.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the Department of Labor's motion for summary judgment (R. 39), and DENIES the Union's motion for summary judgment (R. 53)

and motion for disclosure (R. 69). The Clerk of the Court is directed to enter a final judgment for defendant.

Entered: /s/ Ruben Castillo
**Judge Ruben Castillo**
**United States District Court**

**Dated:** August 17, 2011